WEST PARK ASSOCIATES, a California limited partnership, et al., Plaintiffs,

v.

BUTTERFIELD SAVINGS & LOAN ASSOCIATION, a California savings and loan association, et al., Defendants.

PACIFIC FRONTIER WOOD MARKETS, INC., an Oregon corporation, et al., Plaintiffs,

v.

BUTTERFIELD SAVINGS & LOAN ASSOCIATION, a California savings and loan association, et al., Defendants.

WILDISH LAND COMPANY, an Oregon corporation, Plaintiff,

v.

BUTTERFIELD SAVINGS & LOAN ASSOCIATION, a California savings and loan association, et al., Defendants.

Civ. Nos. 85–2011–AS, 85–2012–AS and 86–296–AS.

United States District Court, D. Oregon.

Jan. 29, 1993.

Frederick T. Smith, J. Bradford Shiley, John P. Crowell, Portland, OR, for plaintiffs.

Daniel H. Skerritt, Steven K. Blackhurst, Ater, Wynne, Hewitt, Dodson & Skerritt, Portland, OR, Robert P. Mallory, Peter J. Diedrich, Judith L. Anderson, Pettit & Martin, Los Angeles, CA, Jordan Luke, Manuel A. Palau, Federal Home Loan Bank Bd., Washington, DC, for defendant F.D.I.C. (FDIC) (formerly Federal Sav. and Loan Ins. Corp. (FSLIC), Receiver for, defendants Butterfield Sav. & Loan Ass'n, and for Butterfield Development Corp., Butterfield Venture Corp., Butterfield Capital Corp., Butterfield Federal Sav. and Loan Ass'n, and Butterfield Property Management Corp.

Frank H. Lagesen, Lawrence P. Blunck, Cosgrave, Vergeer & Kester, Portland, OR, for defendants Schwabe, Williamson, Wyatt, Moore & Roberts.

Arden E. Shenker, Elizabeth A. Trainor, Tooze, Shenker, Holloway & Duden, Portland, OR, for defendants Pike, Urland & Morello and Robert L. Pike.

## AMENDED OPINION

FRYE, District Judge:

The matters before the court are the objections of the parties to the Findings and Recommendations filed by the Honorable William M. Dale, United States Magistrate Judge, on May 28, 1992 and September 17, 1992.

## BACKGROUND

On June 17, 1991, plaintiffs moved the court for an order of partial summary judgment (# 295) against the Federal Deposit Insurance Corporation as receiver for the individual Butterfield defendants, the Butterfield Savings & Loan Association, the Butterfield Development Association, the Butterfield Development Corporation, the Butterfield Venture Corporation, the Butterfield Capital Corporation, and the Butterfield Property Management Corporation, on their second claim for relief in the sixth amended complaint for the sale of unregistered securities.

Also on June 17, 1991, defendants filed a joint motion for complete and partial summary judgment (# 296), asking the court to enter judgment as a matter of law against all of the plaintiffs as to all three of the claims for relief alleged in plaintiffs' sixth amended complaint.

On May 28, 1992, Magistrate Judge Dale filed a Findings and Recommendation in which he concluded that the motion of the plaintiffs for partial summary judgment (# 295) should be granted as to the issue of liability, but denied as to the issue of damages on the second claim of the plaintiffs which is that the Butterfield defendants sold unregistered stock. In his Findings and Recommendation, Magistrate Judge Dale explained:

The Purchase Agreements executed in connection with the real property sales list the Butterfield Defendants as "Buyer" and the plaintiffs as "Seller." Under "RECITALS," the agreements provide that "BUYER desires to purchase [Seller's] improved real property . . . on certain terms and conditions." The Agreements further provide for the transfer of BEC stock. . . .

Since the Butterfield Defendants sold unregistered stock, for which they were not entitled to an exemption under Division 36 due to the fact that they were not the "issuer" of such stock, plaintiffs are entitled to summary judgment on the issue of liability.

Findings and Recommendation, May 28, 1992, pp. 7–8.

On September 17, 1992, Magistrate Judge Dale filed a Findings and Recommendation in which he addressed each part of the joint motion of the defendants for complete or partial summary judgment (# 296), and in which he reconsidered his earlier recommendation in his Findings and Recommendation of May 28, 1992 that the motion of the plaintiffs for partial summary judgment (# 295) be granted as to the issue of the sale of unregistered stock.

In his Findings and Recommendation of September 17, 1992, Magistrate Judge Dale reviewed the affidavit of Nelson Coleman and the documents submitted as Exhibits 2006–2014 and concluded that this evidence required that the motion of the plaintiffs for partial summary judgment (# 295) be denied. Magistrate Judge Dale determined that the affidavit of Coleman and Exhibits 2006–2014 "create a genuine issue of material fact as to whether the Butterfield Defendants or [Butterfield Equities Corporation] sold the subject securities to plaintiffs." Findings and Recommendation, September 17, 1992, p. 10. Magistrate Judge Dale concluded that "while the listing of the Butterfield Defendants as 'SELLER' in the Purchase Agreements is strong evidence that the Butterfield Defendants sold the stock at issue to plaintiffs, in view of the Coleman affidavit and Exhibits 2012–2014, plaintiffs are not entitled to partial summary judgment on their second claim." *Id.*

In his Findings and Recommendation of September 17, 1992, Magistrate Judge Dale amended his Findings and Recommendation of May 28, 1992 in order to recommend to this court that the motion of the plaintiffs for partial summary judgment (# 295) be denied. Magistrate Judge Dale went on to address the remaining issues raised in the joint mo-

tion of the defendants for complete or partial summary judgment (# 296) and to recommend that the motion be granted in part and denied in part.

The matters now before this court are 1) the objections of the plaintiffs to the September 17, 1992 Findings and Recommendation; and 2) the consolidated objections of the defendants to the May 28, 1992 and the September 17, 1992 Findings and Recommendations. This court reviews all objections *de novo*. 28 U.S.C. § 636(b)(1). A review *de novo* requires this court to determine anew the motion of the plaintiffs for partial summary judgment (# 295) and the joint motion of the defendants for complete or partial summary judgment (# 296).

## UNDISPUTED FACTS

The Butterfield Equities Corporation was a savings and loan holding company which held one hundred percent of the issued and outstanding capital stock of its sole subsidiary, the Butterfield Savings & Loan Association, which was engaged in the savings and loan business. As a savings and loan holding company holding one hundred percent of the issued and outstanding stock of the Butterfield Savings & Loan Association, the Butterfield Equities Corporation controlled the Butterfield Savings & Loan Association.

The Butterfield Savings & Loan Association owned one hundred percent of the capital stock in various subsidiaries of state-approved service corporations, such as the Butterfield Capital Corporation, the Butterfield Development Corporation, the Butterfield Property Management Corporation, the Butterfield Realty Corporation, and the Butterfield Venture Corporation. Each of these subsidiaries was involved in real estate activities.

In 1984, the Articles of Incorporation of the Butterfield Equities Corporation were amended to permit the Butterfield Equities Corporation to offer for sale shares of its Series A and B cumulative preferred stock. On June 14, 1984, the Butterfield Equities Corporation registered its shares of cumulative preferred stock with the Corporation Commissioner of the State of Oregon. These shares of cumulative preferred stock in the Butterfield Equities Corporation were sold by the Butterfield Equities Corporation in connection with its acquisition of certain real properties located in the Pacific Northwest, including the real estate properties involved in this litigation. The real estate transactions involving the sale of the cumulative preferred stock in the Butterfield Equities Corporation were intended to ultimately improve the financial position of the Butterfield Equities Corporation by increasing its equity in its savings and loan subsidiary, the Butterfield Savings & Loan Association.

In June and September of 1984, the plaintiffs in these consolidated cases were involved in a series of transactions. The transactions in which the plaintiffs were involved were negotiated separately, and each transaction involved the sale of an interest that an individual plaintiff had in real estate. In exchange for the interests of these individual plaintiffs in real estate, they were given cash and were given or were promised preferred stock in the Butterfield Equities Corporation, the sole owner of the Butterfield Savings & Loan Association.

Each transaction was memorialized in a Purchase Agreement and a separate Stock Subscription and Purchase Agreement. Each Purchase Agreement executed in connection with each real property sale lists a Butterfield defendant as "Buyer" and a plaintiff as "Seller." Under "RECITALS," each agreement provides that "BUYER desires to purchase [Seller's] improved real property ... on certain terms and conditions." Each agreement states, for example, as follows:

> At Closing, the sum of ONE MILLION TWO HUNDRED SIXTY–FIVE THOUSAND TWO HUNDRED NINETY AND NO/100 DOLLARS ($1,265,290.00) represented by ONE HUNDRED TWENTY–SIX THOUSAND FIVE HUNDRED TWENTY–NINE (126,529) shares of the TEN AND NO/100 DOLLARS ($10.00) par value Series A Preferred Stock of Butterfield Equities Corporation, a California corporation (herein the "Stock). SELLER hereby acknowledges receipt of the Stock.

928

Exhibit A to Plaintiffs' Reply to Defendants' Response to Summary Judgment (Installment Sale of Property), p. 2.

Each Stock Subscription and Purchase Agreement sets out the terms and conditions of each sale of stock. These Stock Subscription and Purchase Agreements are attached to the Affidavit of Peter J. Diedrich in Support of FDIC's Opposition to Plaintiffs' Motion for Summary Judgment or Partial Summary Judgment as Exhibits 1–20. The initial language in each Stock Subscription and Purchase Agreement states that "[t]he parties to this Agreement are: [plaintiff's name] and BUTTERFIELD EQUITIES CORPORATION, a California corporation." The Stock Subscription and Purchase Agreements continue as follows:

BEC desires to issue and Buyer desires to subscribe to and purchase certain preferred stock to be issued by BEC containing certain rights and preferences. The parties therefore agree as follows:

1. *Purchase and Sale of Shares*

(a) Prior to the Closing referred to in paragraph 1(b) below, BEC shall authorize the issuance of 2,500,000 shares of that certain authorized series of its stock designated "Series B Preferred Stock" referred to and to be subject to that certain Certificate of Determination of Preferences of Series B Preferred Stock of Butterfield Equities Corporation, a copy of which is attached hereto as Exhibit A ("Preferred Stock"). *Upon Closing, BEC shall issue and sell and Buyer shall purchase shares of said Preferred Stock ("the Shares(s)").* The price of the Shares shall be $___ per Share (for a total purchase price of $_____), payable in the form of consideration and in the manner set forth on the attached Exhibit B.

. . . .

(c) *Delivery of Stock Certificates.* As soon as reasonably practicable after the Closing, BEC shall cause the delivery to Buyer of a stock certificate representing its ownership of the Shares.

Exhibit 6 to Affidavit of Peter J. Diedrich, p. 1 (emphasis added).

Neither the Butterfield Savings & Loan Association nor any one of its subsidiaries was ever registered as broker-dealers in the State of Oregon. Butterfield Equities Corporation did not, in any way, sell, convey or transfer any of its Series A or B cumulative preferred shares of stock to the Butterfield Savings & Loan Association or to any of its subsidiaries.

The plaintiffs are the original issuees of the Series A and B cumulative preferred stock in the Butterfield Equities Corporation which was issued to them by the Butterfield Equities Corporation at the time of the real estate transactions set out in the Purchase Agreements. The shares of the Series A and B cumulative preferred stock in the Butterfield Equities Corporation were issued by the Butterfield Equities Corporation directly to the plaintiffs, who dealt directly with the officers of the Butterfield Equities Corporation in connection with the issuance of these shares of stock in the Butterfield Equities Corporation.

Correspondence regarding these stock transactions was directed to the Butterfield Equities Corporation by counsel for the plaintiffs in the real estate transactions. After the real estate transactions were completed, correspondence from the Butterfield Equities Corporation to the plaintiffs regarding the shares of stock in the Butterfield Equities Corporation identified the Butterfield Equities Corporation as the seller of the stock.

The accounts of deposit of the Butterfield Savings & Loan Association were insured by the Federal Savings and Loan Insurance Corporation. On August 7, 1985, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation as receiver for the Butterfield Savings & Loan Association. The Federal Savings and Loan Insurance Corporation was later succeeded by the Federal Deposit Insurance Corporation (FDIC) as receiver. The FDIC is the defendant in this case which is responsible for the liabilities of the Butterfield Savings & Loan Association and the other Butterfield defendants. The Butterfield Equities Corporation is not a defendant in this action.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

The decision faced by the court is essentially the same decision faced by a court on a motion for a directed verdict—that is, whether the evidence on the motion for summary judgment presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.*

## ANALYSIS

In their sixth amended complaint, the plaintiffs allege three claims for relief as follows: 1) the violation of the Oregon Blue Sky Law for the offer to sell unregistered securities; 2) the violation of the Oregon Blue Sky Law for the sale of unregistered securities; and 3) the sale of securities by untrue statements or omissions. The court will examine each of these claims for relief.

### 1. *First Claim for an Offer to sell Unregistered Securities*

■ On June 7, 1991, this court adopted the Findings and Recommendation of Magistrate Judge Dale filed on March 29, 1991 and denied the motion of the plaintiffs for partial summary judgment on their claim that the Butterfield defendants offered to sell unregistered securities. Magistrate Judge Dale concluded that "the plain language of .ORS 59.115(6) [ORS 59.115(7) ] [that "[n]o action may be commenced under this section solely because an offer was made prior to registration of the securities"] indicates that that section was enacted to cover the present situation." Findings and Recommendation, March 29, 1991, p. 7.

Consistent with this ruling, the defendants are entitled to judgment as a matter of law against the plaintiffs on their first claim for relief in the sixth amended complaint. The joint motion of the defendants for complete and partial summary judgment # III (# 296) is granted.

### 2. *Second Claim for Sale of Unregistered Securities*

■ In their motion for partial summary judgment (# 295), the plaintiffs argue that they are entitled to summary judgment on the second claim for relief for the sale of unregistered securities on the grounds that the stock in the Butterfield Equities Corporation was registered in the State of Oregon by the Butterfield Equities Corporation and not by the Butterfield Savings & Loan Association and the other Butterfield subsidiaries; that the Butterfield Savings & Loan Association and the other Butterfield subsidiaries were the sellers of the stock in the Butterfield Equities Corporation rather than the Butterfield Equities Corporation; and that, therefore, the Butterfield Savings & Loan Association and the other Butterfield subsidiaries sold stock unlawfully pursuant to O.R.S. 59.055.

In their joint motion for complete or partial summary judgment # IV (# 296), the defendants assert that they are entitled to judgment as a matter of law on the plaintiffs' second claim for relief for the sale of unregistered securities on the grounds that the Butterfield Equities Corporation was the seller of the stock to the plaintiffs rather than the Butterfield Savings & Loan Association and the Butterfield subsidiaries, and that the registration of the Butterfield Equities Corporation was effective, and therefore there was no unlawful sale of securities by the Butterfield

930

Savings & Loan Association and the Butterfield subsidiaries under the laws of the State of Oregon. The defendants contend that the Butterfield Equities Corporation, the registered seller of the stock in the State of Oregon, sold the stock directly to the plaintiffs and received as its consideration the transfer of real property to the Butterfield Savings & Loan Association or to one of the Butterfield subsidiaries.

The court finds that the stock in the Butterfield Equities Corporation at issue here was registered under Division 36 by the Butterfield Equities Corporation, not the Butterfield Savings & Loan Association and/or the Butterfield subsidiaries. The court further finds that the stock in the Butterfield Equities Corporation was never transferred to the Butterfield Savings & Loan Association or to any of the Butterfield subsidiaries.

The Stock Subscription and Purchase Agreements state that the seller of the stock in the Butterfield Equities Corporation is the Butterfield Equities Corporation. This statement is consistent with the fact that the Butterfield Savings & Loan Association and the Butterfield subsidiaries never had *any* ownership interest in the stock of the Butterfield Equities Corporation. This fact is consistent with the fact that the Butterfield Equities Corporation issued the shares of its stock directly to the plaintiffs. This fact is consistent with the fact that the plaintiffs dealt directly with the Butterfield Equities Corporation in matters relating to the sale of its stock.

The only evidence that the plaintiffs have to support their claim that the Butterfield Savings & Loan Association and the Butterfield subsidiaries were the sellers of stock in the Butterfield Equities Corporation is the language of the Purchase Agreements. In the Purchase Agreements, the terms of the sales of the real property from the plaintiffs to the Butterfield Savings & Loan Association or to one of the Butterfield subsidiaries are set out. In the Purchase Agreements, the parties agree that the transfer of stock in the Butterfield Equities Corporation to the plaintiffs constitutes a part of the payment made to the plaintiffs, but the Purchase Agreements are not agreements to sell stock

that the Butterfield Savings & Loan Association and the Butterfield subsidiaries did not own. The evidence is undisputed that the stock in the Butterfield Equities Corporation was issued by the Butterfield Equities Corporation to the plaintiffs as original issuees pursuant to the terms of the Stock Subscription and Purchase Agreements.

The court concludes that, based on the undisputed evidence in this case, the seller of the stock in the Butterfield Equities Corporation was the Butterfield Equities Corporation. The Butterfield Equities Corporation registered its preferred stock with the Corporation Commissioner of the State of Oregon. The Butterfield Savings & Loan Association and the Butterfield subsidiaries did *not* own any stock in the Butterfield Equities Corporation and therefore could not and did not sell any unregistered stock in the Butterfield Equities Corporation.

The joint motion of the defendants for complete or partial summary judgment # IV (# 296) is granted.

### 3. Third Claim for the Sale of Securities by Untrue Statements or Omissions

■ In their joint motion for complete or partial summary judgment # XVII through # XXXIV (# 296), the defendants contend that they are entitled to judgment as a matter of law on the third claim of the plaintiffs for the sale of securities by untrue statements or omissions on the grounds that the plaintiffs have no claim under O.R.S. 59.-115(1)(b) because that statute relates only to the "sale of securities." The defendants argue that the Butterfield Equities Corporation, the seller of the securities, is not a defendant in this case and that the claims are not properly brought against them.

The plaintiffs contend that the Butterfield Equities Corporation is not the seller of the stock in the Butterfield Equities Corporation. In addition, the plaintiffs contend that even if the Butterfield Equities Corporation had something to do with the sale of the stock, the Butterfield Savings & Loan Association and the Butterfield subsidiaries also remain liable as the sellers of the stock in the But-

terfield Equities Corporation under O.R.S. 59.015.

O.R.S. 59.015(16)(a)(A) states that "Salesperson" means "[a] person, other than a broker-dealer, who represents or purports to represent a broker-dealer, issuer or owner of securities in effecting or attempting to effect in any manner transactions in securities."

The Butterfield Equities Corporation was the seller of its stock and directly issued the shares of its stock to the plaintiffs in this case. To the extent that any violation of the securities laws of the State of Oregon occurred in connection with the registration or the sale of the stock in the Butterfield Equities Corporation, such claims are against the Butterfield Equities Corporation, the entity that issued and sold that stock.

The joint motion of the defendants for complete or partial summary judgment # XVII through # XXXIV (# 296) are granted.

## CONCLUSION

The Findings and Recommendations filed by Magistrate Judge Dale on May 28, 1992 and September 17, 1992 are not adopted. The motion of the plaintiffs for partial summary judgment (# 295) is denied, and the joint motion of the defendants for complete or partial summary judgment # III, # IV, and # VI through # XVI (# 296) is granted.

The court will file a judgment in favor of the defendants and against the plaintiffs.